[Cite as *Boyd v. Cogan*, 2012-Ohio-1604.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| DEAN A. BOYD, | : | |
| | : | |
| Plaintiff-Appellant. | : | Case No: 11CA3424 |
| | : | |
| v. | : | |
| | : | <u>DECISION AND</u> |
| VERNON COGAN, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellee. | : | Filed:  April 4, 2012 |

---

<u>APPEARANCES:</u>

George L. Davis, IV, George L. Davis, III Co., L.L.C., Portsmouth, Ohio, for Appellant.

Steven M. Willard, Bannon, Howland & Dever Co., L.P.A., Portsmouth, Ohio, for Appellee.

---

Kline, J.:

**{¶1}**   Dean A. Boyd (hereinafter "Boyd") appeals the judgment of the Scioto County Court of Common Pleas, which found against Boyd on all counts of his civil suit against Vernon Cogan (hereinafter "Cogan").  Initially, Boyd contends that the trial court based its decision on an issue that was not before the court -- namely, mitigation of damages.  We disagree.  Instead, we find that the trial court's reference to mitigation of damages is mere surplusage.  Next, Boyd contends that the trial court's decision is against the manifest weight of the evidence.  Because some competent, credible evidence supports the trial court's decision, we disagree.  Accordingly, we overrule Boyd's two assignments of error and affirm the judgment of the trial court.

I.

**{¶2}** Boyd is involved in dirt track racing. In June 2008, Boyd paid Cogan $10,104.38 to do a complete rebuild of Boyd's racecar engine. After the rebuild, Cogan went to Boyd's next race to see how the engine performed. Apparently, the engine experienced some problems, so Cogan agreed to fix it again.

**{¶3}** At a later race, Boyd's oil temperature got up to 250 degrees. (Boyd initially testified that, at this particular race, the oil temperature ran between 250 and 280 degrees. But during his cross-examination, Boyd agreed that the oil temperature "got up to 250 degrees[.]" December 1, 2010 Transcript at 56.) Boyd thought the oil temperature was too hot, so he took the engine to Cropper Automotive.

**{¶4}** Boyd paid Cropper Automotive $9,657 to rebuild the engine. (The engine blew up a short time after Cropper Automotive rebuilt it. Boyd then took the engine back to Cropper Automotive and paid them approximately $15,000 to rebuild it again.)

**{¶5}** On February 12, 2009, Boyd filed a four-count complaint against Cogan. Boyd alleged (1) that Cogan did not perform in a workmanlike manner, (2) that Cogan should have reimbursed Boyd for the repairs done by Cropper Automotive, (3) that Cogan breached his contract with Boyd, and (4) that Cogan's conduct was willful, outrageous, and reckless. In damages, Boyd sought the $10,104.38 that he paid to Cogan, the initial $9,657 that he paid to Cropper Automotive, lost sponsorship money, and potential lost tax benefits.

**{¶6}** Three expert witnesses testified during the hearing before the court. David Cropper and James Cropper testified for Boyd, and Charles Swartz (hereinafter "Swartz") testified for Cogan. The expert witnesses testified about oil temperature, piston placement, and various other engine-related topics. Significantly, David Cropper

testified that Cogan's work was responsible for the engine's problems. Swartz testified, however, that specific parts of the engine -- like the perfectly fine crankshaft -- would show damage if David Cropper's claims were accurate. After the hearing, the trial court ruled in favor of Cogan on all of Boyd's claims.

{¶7} In relevant part, the trial court's February 28, 2011 entry states the following: "The Court finds that the Defendant went beyond the call of duty in the repair of the Plaintiff's engine, and that the work was performed in a workmanlike manner, inasmuch as Plaintiff had blown up several engines prior to, and also the engine repaired by Mr. Cropper. Plaintiff therefore failed to mitigate his damages, and the Court finds by a preponderance of the evidence for the Defendant as to Count One."

{¶8} Boyd appeals and asserts the following two assignments of error: I. "It was reversible error for the trial court to enter judgment in Appellee's favor based upon the affirmative defense of mitigation of damages, which was not raised by the Appellee and was not tried by consent." And, II. "The trial court's judgment for the Appellee was against the manifest weight of the evidence."

II.

{¶9} In his first assignment of error, Boyd contends that the trial court based its decision on an issue that was not before the court -- namely, mitigation of damages. Cogan, however, argues that the issue of mitigation of damages was tried by the implied consent of the parties.

{¶10} "Mitigation of damages is an affirmative defense under Civ.R. 8(C)." *Gupta v. Edgecombe*, 10th Dist. No. 05AP-34, 2005-Ohio-6890, ¶ 12. "An affirmative defense, not listed in Civ.R. 12(B), is waived unless it is raised affirmatively in a

responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15." *Id.*

Accordingly, "[w]hen issues not raised by the pleadings are tried by express or implied

consent of the parties, they shall be treated in all respects as if they had been raised in

the pleadings." Civ.R. 15(B).

{¶11} Here, we find that the trial court's reference to mitigation of damages is

mere surplusage. As a result, we need not determine whether the mitigation-of-

damages issue was tried by the implied consent of the parties. "It is well settled that an

injured party has a 'duty to mitigate its damages and may not recover those damages

which it could have reasonably avoided.'" *GRW Industries, Ltd. v. Bernstein*, 11th Dist.

No. 2010-L-110, 2011-Ohio-4885, ¶ 35, quoting *S & D Mechanical Contrs., Inc. v.*

*Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228, 238, 593 N.E.2d 354 (2d.

Dist.1991). Therefore, a party must actually be injured before the law imposes a duty to

mitigate. *See generally Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-

Ohio-4413, 897 N.E.2d 184, ¶ 13 (3d Dist.) ("Having found that [the appellant] did not

breach the contract, the question of mitigation of damages is moot."); *Shumar v.*

*Kopinsky*, 8th Dist. No. 78875, 2001 WL 995219, *1 (Aug. 30, 2001) ("It is a general

principle of law that a plaintiff who is injured by the tort of another has a duty to

mitigate[.]"); *Sholiton Industries, Inc. v. Wright State Univ.*, 2d Dist. No. 95-CA-101,

1996 WL 531587, *5 (Sept. 20, 1996) ("A party to a contract that has been breached by

the other party has a duty to mitigate its damages."). But here, the trial court found that

Cogan performed the repairs in a workmanlike manner. *See generally Bertsch v. Lee's*

*Granite, L.L.C.*, 6th Dist., No. E-09-021, 2009-Ohio-6261, ¶ 17 ("A 'workmanlike

manner' has been defined as the way work has been customarily done in the

community."). The trial court also found that Cogan (1) did not breach a contract, (2) did not breach any type of warranty, and (3) did not act willfully, recklessly, or outrageously. Simply put, the trial court found that Boyd was not injured by Cogan's actions. Therefore, Boyd had no damages to mitigate, and the reference to mitigation of damages is superfluous to the trial court's decision.

**{¶12}** Accordingly, we find that the trial court's reference to mitigation of damages is mere surplusage, and, as a result, we overrule Boyd's first assignment of error.

III.

**{¶13}** In his second assignment of error, Boyd contends that the trial court's decision is against the manifest weight of the evidence.

**{¶14}** An appellate court will not reverse a trial court's factual finding unless it is against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "A finding is not against the manifest weight of the evidence when the record contains some competent, credible evidence supporting it." *Rini v. Dyer*, 4th Dist. No. 07CA3180, 2008-Ohio-4172, ¶ 38, citing *C.E. Morris Co.* at syllabus. "This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the finding and prevent a reversal." *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997). "[A] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge '* * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered

testimony.'" *In re Jane Doe I*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶15} Here, we find that some competent, credible evidence supports the trial court's decision.  First, Boyd failed to establish that there was anything wrong with the engine after Cogan repaired it following the initial rebuild.  Boyd testified that he took the engine to Cropper Automotive because the oil temperature was running at 250 degrees, which Boyd thought was too hot.  But two expert witnesses testified that 250 degrees is not unusual.  When asked about oil temperatures in these types of engines, Swartz testified that he had "run them a lot at 250 and 260."  January 21, 2011 Transcript at 39.  And even James Cropper testified that "250 is warm[;] it's not too hot."  *Id.* at 8.  Therefore, Boyd failed to establish that there was anything wrong with the engine when he took it to Cropper Automotive.

{¶16} Furthermore, some competent, credible physical evidence supports the finding that Cogan did not damage the engine.  For example, the parties agreed that, in a properly running engine, pistons should not come into contact with the blockhead.  Boyd claimed, however, that the pistons in his engine hit the blockhead after Cogan performed the rebuild.  While testifying, Swartz explained what happens to a piston when it hits the blockhead.  "[I]f they're hitting the head, there will always be a shiny spot across where the carbon and stuff is.  [There will] always be a shiny spot because the carbon has to hit before the piston, you know, carbon[']s on top, it has to hit before the piston.  So it's going to put a place right across the carbon where it's been hitting.  I mean it's plain as day to see."  January 21, 2011 Transcript at 38.  But apparently, none of the pistons that Boyd entered into evidence had "shiny spots" on them.  Swartz also

testified that, if the pistons had come into contact with the blockhead, there would have been damage to the crankshaft. David Cropper agreed, however, that the crankshaft was "perfect." December 1, 2010 Transcript at 115. Therefore, some physical evidence supports the trial court's decision to rule in favor of Cogan.

**{¶17}** Nevertheless, Boyd argues that the trial court should have based its decision on the testimony of David Cropper, who agreed that "Cogan's engine work was the cause of the [engine's] problems[.]" *Id.* at 105. However, "[t]he trier of fact may accept all, some, or none of [an expert witness's] testimony." *Butler v. Stevens*, 2d Dist. No. 22822, 2009-Ohio-2775, ¶ 39, citing *Hotel Statler v. Cuyahoga Cty. Bd. of Revision*, 79 Ohio St.3d 299, 304, 681 N.E.2d 425 (1997). And here, at least some physical evidence supports the trial court's decision. Furthermore, the evidence shows (1) that racing is extremely hard on these types of engines and (2) that these engines can experience frequent breakdowns. In fact, Boyd's engine broke down again after Cropper Automotive rebuilt it. Therefore, the trial court did not have to accept David Cropper's expert opinion.

**{¶18}** All of Boyd's claims depend upon a finding that Cogan had damaged the engine during the rebuild and repair process. But here, some competent, credible evidence supports the trial court's finding that Cogan did not damage the engine. Therefore, all of Boyd's claims must fail -- (1) the workmanlike-repair claim, (2) the failure-to-reimburse claim, (3) the breach-of-contract claim, and (4) the outrageous-conduct claim.

**{¶19}** Accordingly, we find that the trial court's decision is not against the manifest weight of the evidence, and we overrule Boyd's second assignment of error.

Having overruled both of his assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. and Harsha, J.:  Concur in Judgment and Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**